Hibbard, Spencer, Bartlett & Co. vs. Cribb and others.

HIBBARD, SPENCER, BARTLETT & Co., Appellant, vs. CRIBB and others, Respondents.

*September 9 — November 17, 1891.*

*Chattel mortgages: Fraud: Rights of second mortgagee and garnishing creditors: Priority.*

A chattel mortgage given by an insolvent firm having been held valid in part, but void to the extent of a partner's individual debt secured thereby, the holder of a valid second mortgage is entitled to the benefit of the reduction in the amount secured by the first mortgage, as against the creditors who attacked the validity of the mortgages. WINSLOW, J., dissents, being of the opinion that the second mortgagee took only the equity of redemption after payment of the full amount for which the first mortgage was given, and that the attacking creditors were entitled to priority in respect to the amount as to which the first mortgage was held void.

APPEAL from the Circuit Court for *Sauk* County.

From 1883 to July 9, 1889, the firm of J. & P. Hagenah was a dealer in hardware and other merchandise at Reedsburg, Wis. At the latter date, the firm, being heavily in debt and insolvent, executed a mortgage on its stock of goods to Morse, Winchester, and Keith, who were the owners of an unincorporated bank at Reedsburg, known as the

"Citizens' Bank," under which name and style the last-named persons carried on a banking business. The mortgage purports to have been given to secure an indebtedness of $3,500. Immediately after its execution, the bank took actual possession of the mortgaged property under a stipulation in the mortgage authorizing them to do so. Later, and during the same day, the firm executed another mortgage on the same property to a Chicago corporation, known as "*Hibbard, Spencer, Bartlett & Co.*," and such mortgagee also immediately entered into the actual possession of the property mortgaged, jointly with the first mortgagees. This second mortgage purports to have been given to secure an indebtedness of the insolvent firm to that corporation of $9,787, and is absolute in its terms, although the corporation had full notice of the first mortgage.

Afterwards, and during the same month of July (commencing on the 11th), fourteen creditors of the insolvent firm of J. & P. Hagenah brought suits against that firm on their respective demands, and caused garnishee process to be issued in each action against such owners of the Citizens' Bank. The Chicago corporation was also summoned as a garnishee in one of the actions, to wit, that of *George C. Cribb*. The same corporation was in like manner summoned in the action of one *Greenbaum*, a creditor of the insolvent firm, in which action the owners of the Citizens' Bank were not so summoned. The respective garnishees answered in all the actions, denying liability as such, and the respective plaintiffs therein took issue upon each of said answers. Judgment was recovered against the Hagenah firm in each of said actions, amounting in the aggregate to over $2,600.

The garnishee actions were, by consent of all parties, tried together. Before such trial the parties entered into a stipulation that the mortgaged property might be sold, and that the Citizens' Bank should hold the proceeds of

such sale, pending the litigation, in trust for the parties entitled to the money, which was to stand in the place of the property, without prejudice to the right of any party to assert any claim thereto which he might have asserted to the property had it not been sold. Under this stipulation the mortgaged property was sold for $3,900, and the money deposited in the Citizens' Bank.

The trial of the garnishee actions, and the determination of certain appeals therein to this court, resulted in a judgment declaring the mortgage to the owners of the Citizens' Bank a valid security for $1,300, and invalid as to creditors of the insolvent firm for the remaining $2,200 thereof; also, that the mortgage of *Hibbard, Spencer, Bartlett & Co.* is a valid security for the whole amount thereof. The ground upon which the $2,200 was thus eliminated from the first mortgage was that the mortgage secured the debt of an individual partner of the insolvent firm of that amount. Such judgment was rendered by the circuit court pursuant to the mandate of this court in *Cribb v. Morse*, 77 Wis. 322, and *Cribb v. Hibbard, Spencer, Bartlett & Co.* 77 Wis. 199. The circuit court, however, went beyond such mandate, and rendered a further judgment against the owners of the bank, and in favor of the judgment creditors who had garnished such owners, for the $2,200 thus eliminated from the first mortgage security. From such additional judgment the owners of the bank appealed, and the same was reversed, because the Chicago corporation had had no proper opportunity to assert its claim to such fund. Hence, the cause was remanded, with directions to the circuit court to determine that question in some appropriate proceeding, in which all parties interested should be heard. *Cribb v. Morse*, 79 Wis. 193. After the cause was remitted, all the parties in interest entered into a stipulation to the effect that this action was commenced, in which the Chicago corporation is plaintiff, and all the judgment creditors

who had garnishee process against the owners of the Citizens' Bank are defendants. Appearance of all parties was stipulated, formal pleadings were waived, and the issue in such action was stipulated as follows: "It is agreed that *Hibbard, Spencer, Bartlett & Co.* demand the award to that corporation of the full sum of money aforesaid [the $2,200 and the accrued interest thereon], as being covered and embraced by the mortgage given them by J. & P. Hagenah, or as standing in place of goods to them so mortgaged; and said defendants deny said claim, and maintain their right to have the same as garnishee plaintiffs, according to their respective interests in their said actions."

The circuit court found the facts substantially as above stated, and found, as conclusions of law therefrom, that the plaintiff corporation only took an interest in the mortgaged property under its mortgage to the extent of $400, and that the defendants (the plaintiffs in the garnishee actions) were entitled to the $2,200, and accrued interest thereon, in the order of their respective priorities.

The plaintiff corporation appeals from the judgment entered for the defendants pursuant to such conclusions of law.

*Wm. F. Vilas*, for the appellant, argued that the garnishing creditors did not acquire any priority over the second mortgagee, and that the latter could avail himself of the invalidity of the first mortgage, so far as it was invalid. Jones, Chat. Mortg. § 357; Herm. Chat. Mortg. § 146; *Anderson v. Hunn*, 5 Hun, 79; *White v. Graves*, 68 Mo. 218; *Baskins v. Shannon*, 3 N. Y. 310; *Campbell v. Hall*, 16 id. 575; *Thompson v. Van Vechten*, 27 id. 568; *Wray v. Fedderke*, 43 N. Y. Super. Ct. 335, 340; *Frost v. Mott*, 34 N. Y. 253; *Wade v. Rusher*, 4 Bosw. 537; *Barry v. Bennett*, 7 Met. 354; *Daly v. Proetz*, 20 Minn. 411; *Paul v. Hayford*, 22 Me. 234; *Ricker v. Ham*, 14 Mass. 137; *Clapp v. Leatherbee*, 18 Pick. 131; *Hill v. Ahern*, 135 Mass. 158. The

plaintiff may also attack the amount which the first mortgage attempted to secure, and exclude the $2,200 improperly charged upon the firm stock, for the reason that the firm assets should first be applied to firm debts. *Washburn v. Bank of Bellows Falls*, 19 Vt. 279; Story, Partn. § 360; *Rice v. Barnard*, 20 Vt. 479; 2 Lindley, Partn. 599, 600; Id. (Ewell's 2d Am. ed.) 1323–1345; Parsons, Partn. 253, 342 *et seq.*, 502.

*S. U. Pinney* and *A. L. Sanborn*, for the respondents, contended, *inter alia*, that the second mortgagee did not obtain title to the property, but merely the equitable right of the mortgagor to redeem. *Flanders v. Thomas*, 12 Wis. 410; *Smith v. Coolbaugh*, 21 id. 427; *Fraker v. Reeve*, 36 id. 85; *Musgat v. Pumpelly*, 46 id. 660; *Smith v. Phillips*, 47 id. 202; *Boyd v. Beaudin*, 54 id. 193. A fraudulent conveyance is universally held to be valid between the parties and as to all the world except creditors who attack it and purchasers in good faith without notice. *Davy v. Kelley*, 66 Wis. 452, 457. Since the fraudulent conveyance is valid as to the grantor, he cannot convey, transfer, or assign to a second assignee any interest whatever in the property covered by the fraudulent transfer. Having no title himself, he can transfer none to another. *Estabrook v. Messersmith*, 18 Wis. 545; *Hawks v. Pritzlaff*, 51 id. 160; *Powers v. C. H. Hamilton Paper Co.* 60 id. 23, 30; *Vernon v. Upson*, id. 418; *Batten v. Smith*, 62 id. 92, 99; *Kloeckner v. Bergstrom*, 67 id. 197; *Chas. Baumbach Co. v. Miller*, id. 449; *Frost v. Citizens' Nat. Bank*, 68 id. 234, 240; *Southard v. Benner*, 72 N. Y. 424; *Jones v. Graham*, 77 id. 628; *Fox v. Willis*, 1 Mich. 321; *Judge v. Vogel*, 38 id. 570, 574; *Messmore v. Haggard*, 46 id. 558, 564; *Grimsley v. Hooker*, 3 Jones' Eq. 4; *Long v. Wright*, 3 Jones (N. C.), 290; *Green v. Kornegay*, 4 id. 66; *Williford v. Conner*, 1 Dev. 379; *Tyler v. Hamblin*, 11 Heisk. 152; *Tate v. Liggat*, 2 Leigh, 84; *Jones v. Rahilly*, 16 Minn. 320; *Tolbert v. Horton*, 31

Minn. 518; *Meux v. Anthony*, 11 Ark. 411; *Earle v. Burch*,
21 Neb. 702; *Neely v. Wood*, 10 Yerg. 486; *Barton v. Van-
heythusen*, 11 Hare, 126; *Graham v. Railroad Co.* 3 Wall.
704; *Bell v. Wilson*, 52 Ark. 171; *Barnes v. C., M. & St. P.
R. Co.* 122 U. S. 1; *Finley v. McConnell*, 60 Ill. 259. The
plaintiff has no standing as a creditor, as against the first
mortgage. That mortgage was void only as against the
creditors who attacked it. *Bull v. Christenson*, 61 Wis.
576; *Davy v. Kelley*, 66 id. 461; *Vernon v. Upson*, 60 id.
418; 2 Bigelow, Fraud, 136 and note 2; Bump, Fraud.
Conv. 453, 456-7; Wait, Fraud. Conv. 73; *Sale v. McLean*,
29 Ark. 612; *Castle v. Bader*, 23 Cal. 75; *Barnes v. Beighly*,
9 Colo. 475; *Cubbedge v. Adams*, 42 Ga. 124; *Tasker v.
Moss*, 82 Ind. 62; *Zimmerman v. Fitch*, 28 La. Ann. 454;
*Buchanan v. Marsh*, 17 Iowa, 494; *Gorton v. Massey*, 12
Minn. 145; *Partee v. Mathews*, 53 Miss. 140; *Botcher v.
Berry*, 6 Mont. 448; *Ransom v. Schmela*, 13 Neb. 73; *Daw-
son v. Coffey*, 12 Oreg. 513; *Brewer v. Hyndman*, 18 N. H. 9;
*Hafner v. Irwin*, 4 Ired. Law, 529; *Verner v. Downs*, 13
S. C. 449; *Woods v. Scott*, 14 Vt. 518; *Jacobs v. Smith*, 89
Mo. 673, 681.

The following opinions were filed September 29, 1891:

LYON, J. The case is this: J. & P. Hagenah, an insolv-
ent firm, executed to Morse, Winchester, and Keith, own-
ers of the Citizens' Bank, a mortgage on personal property
to secure $3,500, and the mortgagees took immediate pos-
session of the property thereunder. Afterwards the insolv-
ent firm executed another mortgage on the same property
to *Hibbard, Spencer, Bartlett & Co.*, the plaintiff herein, for
$9,787, and such mortgagee also took possession of the
property under its mortgage, jointly with the first mort-
gagees. Thereafter these defendants, who were creditors
of the insolvent firm, brought suits against it on their re-
spective demands, and instituted garnishee proceedings

against the owners of the Citizens' Bank. They afterwards recovered judgments on their respective demands against the insolvent firm. One of those creditors also instituted garnishee proceedings against the plaintiff. The result of the garnishee actions was to establish the validity of the first mortgage to the amount of $1,300, and of the second mortgage for its full amount. Of the amount which the first mortgage was given to secure, $2,200 was for the individual debt of a partner in the insolvent firm, and to that extent the mortgage was held invalid as against the creditors of the firm. The property is now represented by the money obtained for it on the sale thereof, and its value is fixed by the sale at $3,900. The question to be determined is whether the $2,200 should be applied in payment of the judgments of the creditors of the insolvent firm, as the circuit court held it should be applied, or in part payment of the debt secured by the second mortgage.

There seems to be a conflict of authority on the question whether, had the first mortgage been declared void for fraud of the mortgagor, the second mortgagee of the same property took any title thereto under his mortgage beyond the mere equity of redemption remaining in the mortgagor, which in this case was an interest to the extent of $400 only. Some courts have held that, because the first mortgage is valid against the mortgagor (although void as to his creditors for fraud), he could not convey to the second mortgagee any interest in the property covered by the first mortgage, and hence that such interest did not pass to the second mortgagee, but was applicable to the payment of the judgments against the mortgagor.

Other courts have held that the second mortgagee may contest the validity of the prior mortgage, and, if the same is defeated for fraud therein, he may hold the property under his mortgage as against creditors of the mortgagor. The effect of the latter class of cases seems to be that the

second mortgagee takes something more than the mere equity of redemption remaining in the mortgagor after the execution of the first mortgage. They seem to hold that he also takes the whole interest in the property, to the extent of his mortgage, if the first mortgage is held invalid for fraud. The authorities on these conflicting propositions are quite numerous. For the convenience of the bar, reference to them will be preserved in the statement of the arguments when the case is reported.

But we have here no such question. Both mortgages were attacked by creditors of the insolvent firm, by appropriate process, and both have been adjudged valid. To such adjudication all persons having an interest in the matter were parties, and are bound thereby. True, the result of the litigation was to reduce the amount of the first mortgage lien, as to creditors of the mortgagor, $2,200, but that did not destroy the validity of the mortgage. Every dollar of the $1,300 for which it was held a valid security remained a lien upon each article of mortgaged property. We are not aware of any rule of law which will permit a creditor with process to interpose between two valid mortgages prior in right to his claim, and carve out an interest in the mortgaged property superior to that of the second mortgagee. Both mortgages being valid, the reasonable rule seems to be that the second mortgagee takes all the interest in the property remaining after the first mortgage is satisfied, and that subsequent attaching or garnishing creditors of the mortgagor must be postponed until both mortgages are satisfied. It was on this theory that the creditors attacked and sought to impeach the validity of both mortgages, thus recognizing the fact that, if held valid, they would absorb all the mortgaged property. They were held valid securities for an amount aggregating nearly three times the value of such property. It was but an incident to the main purpose of the litigation that the amount which the first mortgage was given to secure was reduced.

Were the property of sufficient value to warrant the redemption of the two mortgages, the judgment creditors would obtain the benefit of their litigation by being able to redeem them with less money than would otherwise have been required. It is their misfortune that they have failed to reduce the mortgage indebtedness below the value of the mortgaged property, thereby leaving a balance to be applied on their judgments. But this circumstance cannot impair the right of the plaintiff to have its mortgage satisfied out of the proceeds of the mortgaged property next after the first mortgage is paid.

Our conclusion is that the circuit court erred in awarding the $2,200 to the judgment creditors, and that the same should have been adjudged to the plaintiff, to be applied on its mortgage.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded with directions to render judgment for the plaintiff in accordance with this opinion.

WINSLOW, J. I dissent from the decision of the majority of the court in this case because it seems to me that such decision is a radical departure from well-established legal principles.

The first mortgage was for $3,500, which was made up of two separate valid claims, viz., a firm debt of $1,300, and a debt of one of the partners individually of $2,200. The mortgage has been held void as to the $2,200 claim at the suit of attacking firm creditors. Plaintiff has never attacked the first mortgage, but has always claimed under its second mortgage.

Now it is manifest that the first mortgage was only void as to creditors of the firm who attacked it by legal proceedings. It was perfectly valid as between the parties. It transferred the title to the goods; consequently the mortgagor retained no title adverse to the first mortgage, nor

could he grant that which he did not have.   Retaining no title, he could convey no title; hence the appellant, under his grant, got no title save the bare equity of redemption after the $3,500 was paid.   He is not a *bona fide* purchaser for value; he is not an attacking creditor; he is simply the mortgagee of an equity of redemption, which equity, as to him, is subject to the payment of $3,500.   In my judgment, the firm creditors who have attacked the first mortgage, and as to whom only a part of it is void, should be adjudged entitled to the funds in court arising from the sale of the mortgaged property up to $3,500, after which the appellant's right would attach.   I have not attempted to cite authorities in this opinion; they will be found in the briefs of counsel, and I believe they fully sustain the positions here taken.

ORTON, J., took no part.

A motion for a rehearing was denied November 17, 1891.