No. 821.

ANDERSON v. OSKAMP ET AL.

CHATTEL MORTGAGE.—*Second and Subsequent Mortgagee.*—*Estoppel.*—
*Fraud.*—Where one accepts a chattel mortgage, wherein it is stipulated that it is second and subsequent to another mortgage executed upon the same property, he can not be allowed to assail the prior mortgage on the ground that it was made with the intent to defraud creditors.

From the Elkhart Circuit Court.

*H. C. Dodge, J. S. Dodge, L. Chamberlain, P. L. Turner,* for appellant.

*H. D. Wilson, W. J. Davis, H. C. Wilson* and *C. W. Baker,* for appellees.

GAVIN, J.—The appellees sued appellant and one Christopher Arnkens, and in their complaint alleged that they had been the owners by chattel mortgage and entitled to the possession of certain personal property therein described; that the defendants conspired together secretly to cheat and defraud plaintiffs out of the property, and on January 2, 1889, unlawfully seized the same without appellees' knowledge, and secretly converted it to their own use to the damage of appellees, etc.

An answer of general denial closed the issues. The cause was tried by a jury, which returned a verdict in favor of appellees, upon which judgment was rendered over appellant's motion for a new trial.

The sufficiency of the complaint is questioned for the first time in this court. It is substantially conceded that it would not repel a demurrer, but it is insisted that after the verdict, whatever technical defects may be found are cured. Since the judgment must, in any event, be reversed, we do not find it necessary to determine this question.

The gist of the action is, not the conspiracy, but the conversion and damage resultant therefrom. *Jenner* v. *Carson*, 111 Ind. 522; *Severinghaus* v. *Beckman*, 9 Ind. App. 388, and authorities there cited.

The appellees' claim to the goods was based upon a chattel mortgage executed by the defendant, Christopher Arnkens, December 29th, 1888, which provides that "the goods hereby mortgaged are in the possession of mortgagee and one Thomas Arnkens who holds a chattel mortgage thereon, to which this is subject."

At the time of the execution of this mortgage, the stock was in possession of the appellant as the senior mortgagee, and was then advertised for sale under his mortgage, and was shortly after sold thereunder to pay appellant's debt. This sale constitutes the alleged conversion.

By instruction No. 4 the court authorized the jury to find for the appellees if it appeared that the mortgage to appellant was executed by Arnkens without any consideration and to defraud his creditors.

This instruction we can not uphold. The case of *Muncie Nat'l Bank* v. *Brown*, 112 Ind. 474, is decisive against appellees' position. It was there said: "The trial court sustained the motion of the appellee to strike out all evidence tending to prove that the mortgage executed to the appellee was fraudulent. The Muncie National Bank is not in a situation to complain of this ruling, for in the mortgage which it accepted that executed to the appellee is recognized as valid. It is recited in the former mortgage that 'it is expressly stipulated herein that this mortgage is made second and subsequent to that of one executed to Cornelia A. Brown and John C. Jenners to secure the payment of certain of the indebtedness of the said Francis M. Brown, to them and each of them as described in said mortgage.' Having treated the mortgage as a valid one, the bank can not be

allowed to assail it on the ground that it was made with the intent to defraud creditors."

This statement of the law we regard as both authoritative and correct. The mortgage, if executed with the fraudulent intent alleged, was not absolutely void. It is a general rule that equity leaves the parties to such a transaction where they place themselves. There is a conflict in the authorities as to whether such a mortgage, while still executory, is enforceable against the mortgagor; but this mortgage was no longer executory. It had been executed by possession taken by the mortgagee. The mortgagee did not, therefore, need to call on a court of equity to aid him, and such a court would not aid the mortgagor to relieve himself from his own fraudulent act. *Van Wy* v. *Clark, Admr.*, 50 Ind. 259; *Second Nat'l Bank* v. *Brady*, 96 Ind. 498; *Wilson* v. *Campbell*, 119 Ind. 286; *Kitts* v. *Willson*, 130 Ind. 492; Jones Chattel Mortgages, sections 345, 346; Wait Fraud. Conv., section 402; 1 Jones Mortgages, section 632.

We are unable to see any great inequity in the enforcement of the rule which holds appellees bound by the provisions of the instrument under which they assert their rights. They are not claiming here their right as creditors merely to subject the property fraudulently conveyed to the payment of their debt by the ordinary process of the law, but they assert a contract right, claiming under the mortgagor, and superior to the position of creditors standing on their rights as creditors. By this contract right they sought and obtained a preference over all the other unsecured creditors. If they are not permitted to dispute the validity of the first mortgage, they are deprived of nothing which they expected to obtain. Their mortgage only purports to give them a lien second to appellant's mortgage. They received exactly what they contracted for. Their debtor offered them

certain security. They accepted it, thus obtaining a preference over the other creditors. Their position is clearly distinguishable from that of the grantee, who obtains relief from his assumption of a mortgage upon the ground of fraud in the transaction with himself affecting the consideration moving to him.

The distinction between appellees' rights as creditors to set aside the fraudulent mortgage by proper procedure, and their right to maintain their lien as mortgagees, is clearly made in the case of *Tolbert* v. *Horton*, 31 Minn. 518, wherein a junior mortgagee sought to avoid as fraudulent a prior mortgage to which his was, by its terms, made subject. The court held that it could not be done, saying, "Neither did the assumed conveyance of the property by the debtor, whether made for the purpose of security or of payment, place the defendant in a position to avail himself of the right as a creditor to assail the prior conveyance as being made in fraud of creditors, and thus to defeat the title of the prior mortgagee." 2 Cobbey Morts., section 1039; *Stevens* v. *McMillan*, 37 Minn. 509.

It is contended by counsel that the property was of value largely sufficient to pay off both mortgages, if properly managed. If this be true, they had it in their power to protect themselves by looking after the sale. If they were prevented from doing this by the fraudulent conduct of appellant after the execution of their mortgage, or if the sale was unfairly and illegally conducted to their damage, their relief should be sought along a different line from that pursued in seeking to avoid the mortgage as fraudulent in its inception.

Counsel for appellees insist that the issue as to the validity of appellant's mortgage was in fact first tendered upon the trial by appellant. With this view we can not concur.

The first evidence offered by appellees was the deposition of one Colgaw, by which the good faith of the senior mortgage was directly, and, as it seems to us, quite vigorously assailed.

Whether or not appellees could, in a simple action for conversion, attack the good faith of the prior mortgage without tendering any direct issue upon it, we do not determine.

The judgment against the appellant is reversed, with instructions to the trial court to grant a new trial, with leave to amend the complaint if desired.

Filed June 19, 1894.